UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JULIAN L. DARBY | CIVIL ACTION NO. 18-cv-0763 |
| VERSUS | JUDGE DOUGHTY |
| CALUMET PACKAGING, LLC, ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Julian Darby ("Plaintiff"), who is self- represented, was formerly employed as a temporary worker at Calumet Packaging in Shreveport. Plaintiff alleges in his complaint that he was subjected to race and age discrimination, as well as unlawful retaliation. Before the court is a motion to dismiss (Doc. 14) filed by the defendants. They attack the several claims in the complaint on a number of grounds, including failure to exhaust administrative remedies and failure to adequately state a claim on which relief may be granted. For the reasons that follow, it is recommended that the motion be granted by dismissing Plaintiff's claim for punitive damages under the ADEA, but the motion should be denied in all other respects.

**Relevant Facts**

    **A. Scope of Facts**

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007). The court may also consider exhibits attached to a complaint, which are part

of the complaint "for all purposes." Fed. R. Civ. P. 10(c). That includes the assessment of a Rule 12(b)(6) motion. U.S. ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 375 (5th Cir. 2004). Accordingly, the court will set forth the relevant facts found in the complaint and the EEOC documents that are attached to it as exhibits.

### B. EEOC Charge Form

Plaintiff filed a charge of discrimination with the EEOC that identified his employer as "Calumet Packaging." He began his employment in April 2015 as a temporary employee. He alleged that, during his employment, he was harassed, intimidated, and denied promotional opportunities by Shane Matherne (a manager). Plaintiff wrote that he was discharged on February 15, 2016, but his employer gave no reason for the actions taken against him.

Plaintiff checked boxes on the EEOC charge form to indicate claims of discrimination based on race and age, as well as retaliation. He wrote in the charge that he believed he had been discriminated against based on his race (black) and age (54), and that he was retaliated against in violation of Title VII. He gave some particulars, including assignment to demeaning jobs with no opportunity for advancement or a raise in pay, denial of requests for training on different positions, never being interviewed for permanent status, advancement of a less experienced and younger white employee over him, and termination shortly after he questioned the advancement of a younger white coworker.

### C. Judicial Complaint

Plaintiff alleges in his complaint that he was a temporary employee who was placed at Calumet by Career Adventures. Plaintiff alleges that the Calumet plant has eleven white

males in management and supervisory positions and two white females in human resources. There are, he alleges, no black males or minority females in supervisory positions. The production crew, on the other hand, is almost fifty percent minority. Plaintiff alleges that there is a "buddy system" that results in the promotion of white males and the exclusion of minorities.

Plaintiff requested, over several months, training as an operator or transfer to blending. Manager Shane Matherne instead assigned Plaintiff to less favorable jobs, which Plaintiff found embarrassing and demeaning, given his several months of experience at the plaint. Plaintiff was denied an opportunity to work as an operator on the pail line in January 2016. The position was instead given to Dakota Osborne, an 18-year-old white male who was the most recently hired temporary employee.

Plaintiff alleges that he questioned manager Steve Haley to express his disappointment and say how unfair this was. Shane Matherne was listening to the conversation and said, "You can go home." Plaintiff alleges that he replied that he had worked there for nine and a half months at the same job, but Osborne had been assigned to be trained on a better job after less than two weeks. Plaintiff said the situation was not fair, and he would rather take the day off than accept his assignment of mopping floors and cleaning the plant. Plaintiff alleges that these actions were "done racially and in a very mean spirited way to try and intimidate and humiliate me as well as to prove a point not to question him."

Plaintiff alleges that he applied to become a permanent employee at the plant. Management announced on February 2, 2016 that Calumet would hire six of its temporary

employees on a permanent basis, and the director wanted to hire those temporary employees who had worked at the plant the longest. Dakota Osborne was hired, but he had less time at the plant than any temporary employee. On February 12, 2016, Shane Matherne announced that there would be a lay-off of temporary employees because business was slow. Two minorities were laid off, and one was terminated.

Plaintiff alleges that he clocked out after a Friday shift, approached Matherne, and spoke to him respectfully and professionally. Plaintiff told Matherne how unfair he was in giving Plaintiff assignments. He said that he believed Matherne was trying to provoke him to quit and setting him up to fail by giving him all of the "odd jobs." Plaintiff also complained that there was no logic in assigning Dakota Osborne to be trained as an operator, while denying Plaintiff that opportunity. Matherne allegedly laughed this off and told Plaintiff, "You just want to work and do what you want to do." Plaintiff alleges that he replied, "I just want you to be fair, and give me the same opportunities, treat me like you treat Dakota Osborne and others. . . There is a name for what you are doing to me." Plaintiff alleges that Matherne stopped smiling at that point, and Plaintiff told him to have a great weekend.

Plaintiff alleges that on the following Monday, February 15, 2016, he picked up a sheet of paper by mistake and saw that it read, "I suggest we release Julian Darby." Another employee told Plaintiff that the document was "all Shane Matherne (sic) doing." Plaintiff asserts that he was in fact terminated on the next work day after he confronted Matherne about what he believed were unlawful practices in assignments and employment.

The complaint contains a number of other allegations, some of which will be discussed below in connection with particular claims.

**Calumet GP, LLC**

Plaintiff's complaint names two defendants. The first is Calumet Packaging, LLC. Defense counsel represents that Calumet Packaging, LLC is not an operating entity. The Shreveport packaging facility is said to be owned by Calumet Branded Products, LLC, and that company has responded to the suit and noted that it was incorrectly named in the complaint as Calumet Packaging, LLC.

The second named defendant is Calumet GP, LLC ("GP"). Defense counsel represents that GP is the general partner of Calumet Specialty Products Partners, LP, which is a publically traded partnership and the indirect parent of Calumet Branded Products, LLC. GP argues that the claims against it should be dismissed because Plaintiff did not exhaust his administrative remedies against GP, which was not specifically named in Plaintiff's EEOC charge of discrimination.

Under Title VII, a plaintiff must exhaust administrative remedies before pursuing employment discrimination claims in federal court. Taylor v. Books A Million, Inc., 296 F.3d 376, 378–79 (5th Cir. 2002). Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue. Id.; Garcia v. Penske Logistics, LLC, 631 F. Appx. 204, 207 (5th Cir. 2015). The ADEA requires a plaintiff to file a charge of discrimination with the EEOC, but the plaintiff need wait only 60 days before filing suit. He does not need a notice of right to sue. Julian v. City of Houston, 314 F.3d 721, 726 (5th Cir. 2002).

There is a general rule that "a party not named in an EEOC charge may not be sued under Title VII." EEOC v. Simbaki, Ltd., 767 F.3d 475, 481 (5th Cir. 2014). But the court should avoid "hypertechnical" readings of charges and be aware that there are exceptions such as when the party named in the EEOC charge is legally identical to the party that is sued or when the defendant received "actual notice of the charge and an opportunity to participate in conciliation. Id.; Aguiniga v. Delgado, 2016 WL 3620728, *2 (S.D. Miss. 2016).

Plaintiff's EEOC charge names "Calumet Packaging" as the sole respondent. His complaint does not include any allegations that explain why he named GP as a defendant. Plaintiff does, however, attach to his memorandum in opposition (Doc. 19) a copy of a Code of Business Conduct and Ethics that he signed in connection with his employment. The document describes the standard of conduct expected from all employees of GP, Calumet Specialty Products Partners, LP, and their subsidiaries and affiliates. That document may have led to uncertainty by Plaintiff as to which entity or entities were his employer and which he should sue.

The Fifth Circuit recently clarified that a failure to exhaust administrative remedies under Title VII is not jurisdictional. "Failure to exhaust is an affirmative defense that should be pleaded." Davis v. Ft. Bend County, 893 F.3d 300, 307 (5th Cir. 2018).[1]

---

[1] This is consistent with the Supreme Court's holding that failure of prisoners to exhaust their administrative remedies under the PLRA is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaints. Jones v. Bock, 127 S.Ct. 910, 921 (2007). The Fifth Circuit has stated in another PLRA case that the burden is on the defendant to demonstrate that a plaintiff failed to exhaust administrative remedies, meaning the defendant "must establish beyond peradventure all

"Although dismissal under rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." Alexander v. Verizon Wireless Servs, LLC, 875 F.3d 243, 249 (5th Cir. 2017). Thus, a defendant is not entitled to a Rule 12(b)(6) dismissal of Title VII claims for failure to exhaust unless it appears from the face of the complaint that the plaintiff has not exhausted. Taylor v. Lear Corp., 2017 WL 6209031, *3 (N. D. Tex. 2017).

Plaintiff's complaint did not plead himself out of court in that fashion. Plaintiff did attach exhibits that could lend support to GP's exhaustion/notice defense, but the complaint itself does not conclusively establish the defense. There may be other documents such as an intake questionnaire, correspondence from the agency, or otherwise that could indicate that GP was targeted by the charge of discrimination, was the subject of an amended charge, received other notice of the proceedings, or the like.[2] A plaintiff does not have a duty to anticipate a defendant's affirmative defense, assemble all documents potentially relevant to the defense, and make them exhibits to his complaint. Accordingly, defense counsel's representations about Calumet's business structure and a lack of proof of

---

of the essential elements of the defense of exhaustion to warrant summary judgment in their favor." Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). The same principles should apply to defenses in other civil cases.

[2] An intake questionnaire may be considered part of the EEOC charge and expand its scope for purposes of exhaustion. Patton v. Jacobs Eng'g Grp., Inc., 874 F.3d 437, 443 (5th Cir. 2017) ("We find that Patton's intake questionnaire should be construed as part of the EEOC charge."). A supporting affidavit provided to the agency can be considered part of an ADEA charge. Fed. Exp. Corp. v. Holowecki, 128 S. Ct. 1147 (2008).

exhaustion as to GP attached to the complaint cannot justify dismissal on the current motion.

If GP wishes to attempt to prevail on any affirmative defense, including failure to exhaust, it should file a motion for summary judgment that presents its relevant evidence (or specifically points to a lack of evidence on an issue) and challenges Plaintiff to present competing evidence and create a genuine dispute of material fact. Dismissal based on the exhaustion or other affirmative defense is premature at this time.

**Failure to Exhaust: Unequal Pay, Failure to Hire, Demotions**

Plaintiff alleged in his complaint that the Shreveport plant had a "secrecy pay grade" for white employees that afforded them more pay than minority employees. Plaintiff also alleged that Calumet improperly denied him transfers to better job assignments or unfairly demoted him during his employment. Defendants argue that these claims fall outside the scope of the two-page charge of discrimination attached to the complaint so should be dismissed with prejudice based on the failure to timely exhaust the claims.

As stated above, the failure to exhaust is an affirmative defense that the defendant has the burden of proving. It is not the plaintiff's obligation to anticipate the defense and attach all relevant evidence to his complaint. There may be other evidence such as an intake questionnaire, affidavit, or other material provided to the EEOC that could expand the scope of the charge and affect this defense. See footnote 2. Accordingly, Defendants' motion to dismiss should be denied with respect to these claims.

**Rule 12(b)(6) Challenges**

    **A.  Introduction**

    Defendants argue that various aspects of Plaintiff's complaint fail to state a claim on which relief may be granted.  To avoid dismissal for failure to state a claim, a plaintiff's complaint must plead enough facts to "state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 127 S.Ct. 1955 (2007)).  The factual allegations must "raise a right to relief above the speculative level."  <u>Twombly</u>, 127 S.Ct. at 1965.  "[P]ro se complaints are held to less stringent standards than those drafted by lawyers," but even in a pro se complaint "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  <u>Taylor v. Books A Million, Inc.</u>, 296 F.3d 376, 378 (5th Cir. 2002).

    **B.  Failure to Train**

    A plaintiff establishes a prima facie case of discrimination under Title VII by showing that he: (1) is a member of a protected class; (2) was qualified for his position; (3) was subjected to an adverse employment action; and (4) that similarly situated employees outside the protected class were treated more favorably.  <u>Nasti v. CIBA Specialty Chems Corp.</u>, 492 F.3d 589, 593 (5th Cir. 2007).  The third prong, an adverse employment action, requires a showing of an ultimate employment decision or its factual equivalent.  That includes matters such as hiring, firing, demoting, promoting, granting leave, and compensating.  <u>Thompson v. City of Waco</u>, 764 F.3d 500, 503 (5th Cir. 2014).

Defendants argue that Plaintiff has not alleged facts that show a prima facie case because denial of training is not an ultimate employment decision. Defendants' argument rests on the assumption that a plaintiff must make out a prima facie case in his complaint to survive Rule 12(b)(6) review, but the Supreme Court has held that plaintiffs need not do so to state a claim on which relief may be granted. The prima facie case "is an evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema NA, 122 S.Ct. 992, 997 (2002). The Court "has never indicated that the requirements for establishing a prima facie case under McDonnell Douglas also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." Id. Raj v. Louisiana State Univ., 714 F.3d 322, 331 (5th Cir. 2013) ("a plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim").

Defendants also rely on the assertion that denial of a training request cannot constitute an adverse employment action. They rely primarily upon Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398 (5th Cir. 1999) and cases that have followed it. Schackelford was, however, decided on appeal of a grant of summary judgment, not a motion to dismiss under Rule 12(b)(6). The requested training in that case was for a specialized filing software, but there was no evidence that the lack of such training would affect the employee's benefits or other employment status. The other cases cited by Defendants also arose in the context of a summary judgment dispute, and the Court in those cases looked to whether there was evidence to show more than a potential, tangential effect on increased compensation or other ultimate employment decision. Brooks v. Firestone Polymers, LLC, 640 Fed. Appx. 393, 396-97 (5th Cir. 2016) (collecting cases on denial of training).

Plaintiff has done more than simply allege that he was denied training on some process that was peripheral to his job assignment. He alleged that he was, because of his race and age, denied training as an operator on the pail line, which the complaint suggests was a job with greater responsibility and compensation. The claim is essentially one for the denial of a promotion or refusal to hire as a permanent employee, as opposed to a generic complaint that a request for training was denied. Considering Plaintiff's pro se status and his allegations of fact, it is recommended that Defendants' motion to dismiss be denied with respect to this issue. Defendants will need to pursue a motion for summary judgment if they wish to have a decision on the merits of such a fact-based claim.

**C. Unfavorable Work Assignments**

Plaintiff alleges that he complained about what he considered unfair treatment, and his supervisors deliberately assigned him to low level and demeaning jobs with hopes that he would become discouraged and quit. Defendants argue that this allegation fails to state a claim on which relief may be granted because it does not present an ultimate employment decision. A transfer or reassignment may, however, constitute an adverse employment action if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement. <u>Thompson</u>, 764 F.3d at 503. Plaintiff has alleged facts that provide fair notice of a plausible claim of discrimination related to his job assignments. Rule 12(b)(6) review does not allow the fact-intensive scrutiny required to render a final decision that the claim lacks merit. Defendants' motion to dismiss should be denied with respect to this issue.

### D. Age Discrimination

Defendants argue that Plaintiff's age discrimination claim should be dismissed because he has made only a conclusory allegation that young white males were given favorable opportunities in training, transfers, and higher wages. Defendants also fault Plaintiff for not specifically alleging that he was qualified to be a blender, one of the jobs he sought. These arguments should be rejected.

Plaintiff alleged that he was 54 and "the most experience (sic) and qualified applicant in a Packaging Plant (Formerly Employed at Pennzoil for 13 years)." He alleged that temporary employees who were "much younger" were given more opportunities in training, transfers, and multiple job assignments, and all of them had "less time at this Plant and much more less experience." Plaintiff identified by name five white employees between the ages of 18 and 21 who were alleged to have been afforded greater starting pay, training in blending, and other opportunities not afforded to Plaintiff despite his greater experience and qualifications. Complaint, ¶ 8.

Plaintiff not only alleged that he was qualified for the assignments he sought, he alleged that he was the most qualified applicant in the plant. He was not required to allege all specific facts that he would need to prove to prevail at trial to survive Rule 12(b)(6) review of his complaint. He had to state only a short and plain set of facts that provided grounds for a plausible claim. The facts discussed above are adequate to do that with respect to his age discrimination claim.

### E. Retaliation

Title VII provides that it is an unlawful employment practice for an employer to discriminate against any of his employees or applicants "because he has opposed any practice made an unlawful employment practice by this subchapter . . ." 42 U.S.C. § 2000e-3(a). The term "oppose" carries its ordinary meaning of resisting or confronting what is reasonably believed to be unlawful discrimination. Crawford v. Metropolitan Government, 129 S.Ct. 846, 850 (2009). An informal complaint may constitute protected activity for purposes of retaliation claims. Amanduron v. Am. Airlines, 416 Fed. Appx 421, 424 (5th Cir. 2011).

Defendants argue that Plaintiff has not stated a claim for retaliation because he did not adequately allege that he engaged in "protected activity" by opposing a practice made unlawful under Title VII. Plaintiff, who it must be remembered is self-represented, alleges in the retaliation portion of his complaint that Shane Matherne announced layoffs among temporary employees due to slow business. The employees who were laid off or terminated included minorities with four to seven months of experience, while an 18 year old white male with less time at the plant than any temporary employee was retained. Plaintiff alleges that this action violated Title VII. He alleges that, at the end of his shift that day, he approached Matherne and "told him how unfair he is in giving me the assignments" that Plaintiff said were part of Matherne's effort to provoke him to quit. Plaintiff also complained that there was no logic in assigning Osborne over Plaintiff to be trained as an operator. Matherne is alleged to have laughed this off but stopped smiling when Plaintiff told him, "I just want you to be fair, and give me the same opportunities,

treat me like you treat Dakota Osborne and others. . . There is a name for what you are doing to me." Plaintiff was fired on the next work day.

Defendants argue that Plaintiff's complaint fails to plead a plausible retaliation claim because it does not specifically allege that Plaintiff opposed a practice made unlawful under Title VII. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. A reasonable reader of Plaintiff's complaint, as a whole, would draw an inference that Plaintiff was complaining to Matherne about racial or age-based discrimination. Plaintiff apparently chose not to come out and directly accuse Matherne of racism or other form of unlawful discrimination, but a reasonable inference can be drawn that this is what Plaintiff meant and what Matherne understood when Plaintiff told him there was a name for what Matherne was doing.

The Fifth Circuit recently noted that complaints of staffing "bias" and an e-mail that expressed concerns "regarding equal and fair treatment" related to race and gender equality in the workplace so were protected activities. Ganheart v. Brown, ___ Fed. Appx ___, 2018 WL 3213748, *3 (5th Cir. 2018). Plaintiff's allegations are similar in nature. They are sufficient to survive Rule 12(b)(6) review.

**F. Employer Status**

Title VII and the ADEA allow an employee to assert a claim against an "employer." The courts require the employee to show that the defendant meets the statutory definition of employer and that there was an "employment relationship" between the employee and the defendant. Deal v. State Farm, 5 F.3d 117, 118 n. 2 (5th Cir. 1993). Defendants allege

that Plaintiff does allege with sufficient specificity that either of the named defendants were his employer. The undersigned finds that Plaintiff's allegations are adequate in this regard.

Plaintiff's EEOC charge of discrimination identified "Calumet Packaging" as his employer. Plaintiff alleged in the charge, "I began my employment with the above Respondent" in 2015. He began his judicial complaint by alleging in paragraph four that he was "employed at Calumet Packaging plant in Shreveport" between certain dates. The remainder of his complaint describes various workplace events at the Calumet plant, ending with his termination.

Plaintiff's allegations are adequate to suggest at least the reasonable inference that the named Calumet entities were his employers. No reasonable person could read the complaint and come away with any other conclusion. Defendants may contest which of them was actually his employer, but that is a merits-based defense that will have to be tested by summary judgment or at trial. The complaint alleges an employment relationship between Plaintiff and the defendants that is adequate to survive the Rule 12(b)(6) challenge.

**Punitive Damages under the ADEA**

Plaintiff's original and amended complaints requested an award of punitive damages. Defendants argue that Plaintiff is not entitled to recover punitive damages with respect to his ADEA claims. They are correct. "Unlike Title VII, the ADEA does not provide for punitive damages." Smith v. Berry Co., 165 F.3d 390, 395 (5th Cir. 1999). The Fifth Circuit recently held that a contrary interpretation of the ADEA by the EEOC was not an intervening change in the law that would displace its precedent on this point.

Vaughn v. Anderson Regional Medical Center, 849 F.3d 588 (5th Cir. 2017).  Defendant's motion should, therefore, be granted with respect to this issue.

Accordingly,

It is recommended that Defendants' Motion to Dismiss (Doc. 14) be granted in part by dismissing any claim for punitive damages based on the ADEA and be denied in all other respects.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 4th day of October, 2018.

Mark L. Hornsby
U.S. Magistrate Judge